UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CRIMINAL NO. |
| | : | |
| | : | VIOLATIONS:  18 U.S.C. §§ 286, 1341, 2, |
| | : | 981, 28 U.S.C. § 2461 |
| v. | : | (Conspiracy to Defraud the Government |
| | : | With Respect to Claims, Mail Fraud, |
| | : | Causing an Act to Be Done, Forfeiture) |
| **CARLOS SERRANO,** | : | |
| | : | UNDER SEAL |
| Defendant. | : | |

## INFORMATION

The United States Attorney and the United States Department of Justice, Criminal Division, Fraud Section charge that at all times material to this Information:

## INTRODUCTION

1. CARLOS SERRANO ("SERRANO") was the owner, President, and only employee of Serve-Ease Office Systems, Inc. ("Serve-Ease"), located in Glendale, CA. Serve-Ease was in the business of selling and servicing office machines in the United States. Serve-Ease was not in the business of exporting goods overseas. From in or about November 2000 until April 2001, SERRANO, through Serve-Ease, acted as a purported "exporter" in a loan transaction, falsified documents sent to the Export-Import Bank of the United States ("Ex-Im Bank"), and misappropriated approximately $1.1 million in loan proceeds that were insured by Ex-Im Bank.

2. Co-Conspirator 1 ("CC-1") was a Philippine national who lived in Manila, Philippines and was the broker of the fraudulent loan transaction. CC-1 was also an owner and President of SINA Trading, a company used to facilitate the fraudulent loan transaction.

3. Co-Conspirator 2 ("CC-2") was a Philippine national living in California and a nephew of CC-1. CC-2 was also General Manager of SINA Trading.

4. Co-Conspirator 3 ("CC-3") was a Philippine national living in California.

5. CC-1, CC-2, and CC-3 assisted SERRANO in executing the fraudulent loan transaction and misappropriating the loan proceeds.

6. MTC Optical Laboratory, Inc. ("MTC Optical") was an optical company based in Manila, Philippines and was the purported beneficiary of the fraudulent loan transaction.

7. First International Bank was a federally insured financial institution based in Hartford, Connecticut and was the lender in the fraudulent loan transaction.

8. The Ex-Im Bank was an independent agency of the executive branch of the United States and located in Washington, D.C. It was also the official export credit agency of the United States. The mission of Ex-Im Bank was to assist in the export of United States goods and services to companies overseas. One of the ways Ex-Im Bank fulfilled this mission was by issuing loan guarantees to United States banks on behalf of creditworthy foreign companies for the purpose of purchasing United States goods. Once Ex-Im Bank issues a loan guarantee, if the foreign borrower defaults on its loan repayments to a United States bank, the Ex-Im Bank pays the amount of the outstanding loan to the United States bank. Before issuing a loan guarantee, Ex-Im Bank required that a United States exporter - the person or entity shipping the United States goods on behalf of the foreign borrower - certify to Ex-Im Bank the type, amount, and value of the United States goods that it would be shipping and that the goods shipped were made in the United States. Relying on information provided by SERRANO and others, Ex-Im Bank provided First International Bank with a loan guarantee, promising that the Ex-Im Bank would

reimburse First International Bank for any losses it incurred in the fraudulent MTC Optical loan transaction.

## Count One
### (Conspiracy to Defraud the Government With Respect to Claims)

THE CONSPIRACY

9. Paragraphs 1 through 8 of this Information are realleged and incorporated by reference as if set out in full.

10. From in or about November 2000 until in or about April 2001, in the District of Columbia and elsewhere, SERRANO and his co-conspirators CC-1, CC-2 and CC-3, and others, did unlawfully and knowingly agree, combine and conspire together and with each other to defraud an agency of the United States by obtaining and aiding to obtain the payment and allowance of a false, fictitious and fraudulent claim, that is: to agree, combine and conspire together and with each other to defraud the Ex-Im Bank, an agency of the United States, by obtaining and aiding to obtain the payment and allowance of a false, fictitious and fraudulent claim.

A Goal of the Conspiracy

11. A goal of the conspiracy was for the co-conspirators, including SERRANO, to unlawfully enrich themselves by submitting false and fraudulent information to First International Bank and Ex-Im Bank to obtain and misappropriate the loan proceeds.

Manner and Means of the Conspiracy

12. To achieve the goal of the conspiracy, SERRANO, CC-1, CC-2, CC-3 and others used the following manners and means, among others:

  A. SERRANO and his co-conspirators prepared false documents indicating that United States goods would be purchased and shipped to the Philippines and then submitted those documents to Ex-Im Bank, through First International Bank.

  B. SERRANO and his co-conspirators opened a bank account for the purpose of depositing the fraudulent loan proceeds and distributing those proceeds.

  C. SERRANO and his co-conspirators received money from the bank loan and distributed that money amongst themselves for their own personal benefit and use.

Overt Acts

13. Within the District of Columbia and elsewhere, in furtherance of the above described conspiracy and in order to carry out the objects thereof, SERRANO, CC-1, CC-2, CC-3 and others known and unknown, committed the following overt acts, among others:

  A. In or about November 2000, SERRANO met with CC-1 and agreed to act as "exporter" in the MTC Optical loan transaction in return for $25,000.

  B. On or about March 16, 2001, SERRANO prepared a Commercial Invoice listing more than $1.3 million worth of inventory that he had purportedly purchased on behalf of MTC Optical.

  C. On or about March 16, 2001, SERRANO prepared a Packing List describing the purported contents of nineteen boxes of United States goods and one crate of United States goods that he had shipped to MTC Optical.

  D. On or about April 11, 2001, SERRANO prepared a Supplier's Certificate, certifying that he had purchased and shipped approximately $1.3 million worth of United States

goods to MTC Optical and that the entire amount of inventory was purchased from United States companies.

   E. On or about April 11, 2001, SERRANO sent to Ex-Im Bank, through First International Bank, the Commercial Invoice, Packing List, and Supplier's Certificate that he prepared, as proof that he had purchased and shipped the $1.3 million worth of United States goods.

   F. On or about February 9, 2001, SERRANO and CC-2 unsuccessfully attempted to open a joint bank account at Citizens Bank for the purpose of misappropriating the proceeds of the MTC Optical loan.

   G. On or about February 9, 2001, after the failed attempt to open an account at Citizens Bank, SERRANO opened a bank account with CC-3 at the First Bank & Trust, for the purpose of misappropriating the proceeds of the MTC Optical loan.

   H. From on or about April 20, 2001 until May 22, 2001, after receiving $1,127,982 in MTC Optical loan proceeds from First International Bank, SERRANO transferred approximately $28,200 of the proceeds to himself, $940,000 to CC-2, and $160,000 to a company in Singapore.

**(Conspiracy to Defraud the Government with Respect to Claims, in violation of Title 18, United States Code, Section 286)**

## Count Two
### (Mail Fraud)

14. Paragraphs 1 through 8 and 13 of this Information are realleged and incorporated by reference as if set out in full.

15. From in or about November 2000 until April 2001, in the District of Columbia and elsewhere, SERRANO, along with others known and unknown, did knowingly devise and intend to devise a scheme and artifice to defraud the Ex-Im Bank and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme used the United States mail.

16. On or about April 11, 2001, SERRANO, along with others known and unknown, for the purpose of executing the scheme and artifice to defraud, did knowingly cause to be delivered through a commercial interstate carrier a Supplier's Certificate to First International Bank, knowing that it would be forwarded to the Ex-Im Bank.

**(Mail Fraud, Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1341 and 2)**

## FORFEITURE

17. As a result of the mail fraud offense alleged in Count Two of the Information, which is realleged and incorporated by reference for the purpose of alleging forfeitures to the United States of America pursuant to Title 18, United States Code, Section 981, and Title 28, United States Code, Section 2461(c), defendant SERRANO shall, upon conviction of such offense alleged in the Information, forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to the mail fraud offense, wherever located, and in whatever name held, including, but not limited to a sum of money equal to the

amount of proceeds obtained as a result of the mail fraud in violation of Title 18, United States Code, Section 1341.  By virtue of the offense charged in Count Two of the Information, any and all interest that the defendant has in the property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981, in conjunction with Title 28, United States Code, Section 2461(c).

18.   In the event that any property described above as being subject to forfeiture, as a result of any act or omission by the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of SERRANO up to the value of the above described property in paragraph 17(a)-(e).

**(Forfeiture, Title 18, United States Code, Section 981, Title 28, United States Code, Section 2461)**

        STEVEN A. TYRRELL
        Acting Chief, Fraud Section
        Criminal Division
        United States Department of Justice


By:    _____
     HANK BOND WALTHER
     D.C. Bar # 477218
     Trial Attorney
     Fraud Section, Criminal Division
     United States Department of Justice
     1400 New York Avenue, NW
     Washington, D.C. 20005
     (202) 257-6176


     JEFFREY A. TAYLOR
     United States Attorney
     In and For the District of Columbia

By:    _____
     MICHAEL K. ATKINSON
     D.C. Bar # 430517
     Assistant United States Attorney
     Fraud and Public Corruption Section
     555 4th Street, N.W.
     Washington, D.C. 20530
     (202) 616-3702

Date: October 3, 2006